## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY FLAMER** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 22-CV-3255** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| *Defendants* | : | |

## M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                    SEPTEMBER 14, 2022

Jeffrey Flamer, a pretrial detainee currently housed at Curran-Fromhold Correctional Facility ("CFCF"), filed this civil rights action on August 12, 2022, along with a Motion to Proceed *In Forma Pauperis*.  Named as Defendants in the case are the City of Philadelphia, Commissioner of Prisons Blanche Carney, and Correctional Officer Panavely.  All Defendants are named in their official capacities only.  For the following reasons, Flamer will be granted leave to proceed *in forma pauperis* and the Complaint will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.     FACTUAL ALLEGATIONS

Flamer's allegations are simply stated.  He alleges that on August 1, 2022, he was placed in a cell in the Restricted Housing Unit ("RHU") that does not have a working light.  (Compl. (ECF No. 2) at 1.)[1]  He asserts he is subjected to "darkness at all times" and should not be "housed in a cell that don't work."  (*Id*.)  He asserts that electrical wires hang out of the wall of the cell from a socket, "which is a fire hazard."  (*Id*.)  Flamer also asserts he is not provided an hour of recreation time in the RHU.  (*Id*. at 2.)  Finally, he complains that he is "suffering in extreme heat

---

[1]     Flamer's Complaint consists of handwritten pages and the Court's preprinted form complaint for use by prisoners asserting civil rights claims.  The Court deems the entire submission to be the Complaint in this case and adopts the sequential pagination supplied by the CM/ECF docketing system.

due to a lack of air conditioning" and that "inmates are suffering heat strokes."[2]  (*Id*.)  Flamer

asserts constitutional claims and seeks an injunction to move him to a different cell and to have

the lights fixed.  (*Id*. at 8.)

## II.     STANDARD OF REVIEW

Flamer is granted leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this

early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as

true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter*

*v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774,

---

[2]      At several points in his Complaint, Flamer uses plural pronouns like "we" in referencing the conditions at CFCF.  Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) )).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  Accordingly, the Court construes Flamer's allegations as raising only his own claims and not claims of other inmates at CFCF.

[3]      However, because Flamer is a prisoner he must still pay the $350 filing fee in installments as provided by the Prison Litigation Reform Act.

782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Flamer is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Flamer alleges a constitutional claim about the conditions he has experienced at CFCF. The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Flamer's official capacity claims against Defendants are not plausible and must be dismissed.  Construing the Complaint as also asserting individual capacity claims against Defendants Carney and Panavely, the Court concludes that those claims are also not plausible.

### A.   Official Capacity Claims

Flamer has named the City of Philadelphia, Blanche Carney, and CO Panavely in their official capacities.  To the extent Carney and Panavely are sued in their official capacities, any such claims are dismissed as duplicative of the claims against the City since official capacity claims against City employees are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*; *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court

correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

Flamer's claim against the City is not plausible and must also be dismissed.  Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 665-83 (1978).  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).  Since the City of Philadelphia may not be held liable under § 1983 based solely on the acts of its employees, Flamer's claims against the City fail to the extent he sued the City because it employed individuals who allegedly violated his rights.

Rather, to plead a claim against a municipal entity such as the City under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be

proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Because Flamer fails to allege that his constitutional rights were violated due to a policy or custom of the City of Philadelphia, let alone identify that policy with specificity and describe how that policy or custom was the proximate cause of the constitutional violation, this claim is also not plausible.

**B.     Individual Capacity Claims**

The Court will liberally construe Flamer's claims against Defendants Carney and Panavely as claims against them in their individual capacity. Flamer asserts that Carney oversees the operations of Philadelphia prisons, and Panavely is the officer who placed Flamer in the cell with no lights or ventilation. These allegations are not sufficient to assert plausible constitutional claims.

Flamer names Carney based solely on her role as a supervisor in the Philadelphia prison system. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she

participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Flamer fails to allege that Carney established a policy with deliberate indifference that directly caused constitutional harm. As stated, he failed to make any policy allegations. He also fails to allege that Carney had any personal involvement in the activities he describes. Rather, he asserts liability only on the impermissible ground that Carney oversees all operations of the prison system. Accordingly, any individual capacity claim against Carney must be dismissed.

Any individual capacity claim against Panavely is also not plausible. Flamer asserts only that Panavely was the officer that put him in the hot unlit cell in the RHU.[4] Flamer's claim against Panavely is analyzed under the Due Process Clause of the Fourteenth Amendment, which governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an

---

[4]     Flamer does not allege that his placement in the RHU itself violated his rights, only the lack of light and exposed wires he encountered in the cell violated his rights.

inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that  "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Flamer has failed to allege the subjective component of his claim against Panavely.[5]  His sole allegation is that Panavely placed him in the RHU cell.  This is not sufficient to allege Panavely had a culpable state of mind, specifically an express intent to punish Flamer, or that he acted in a manner that was not rationally related to a legitimate non-punitive government purpose. Without such factual allegations, this claim must be dismissed.

---

[5]      Because of this defect, the Court expresses no opinion whether the conditions Flamer describes are sufficiently serious so as to meet the objective component of the *Stevenson* test.

**IV.    CONCLUSION**

For the reasons set forth, Flamer's Complaint is dismissed.  However, because the Court cannot say at this time that Flamer can never assert plausible claims against the Defendants, the dismissal is without prejudice.  Flamer will be permitted an opportunity to file an amended complaint if he is capable of curing the defects the Court has identified in his claims.  An appropriate order follows with additional instructions on amendment.


*NITZA I. QUIÑONES ALEJANDRO*, J.